Chambers *vs.* McDowell.

---

No. 22.—James Chambers, plaintiff in error, *vs.* Charles McDowell, defendant in error.

[1.] If a plaintiff in execution takes *collateral* security for his judgment, that fact does not release the judgment, nor preclude him from levying his execution.

[2.] If a plaintiff in execution agrees with the defendant *never* to enforce his judgment, it operates as a discharge of the judgment; but if he covenants, or agrees with the defendant not to enforce his judgment *within a limited time,* such covenant or agreement does not operate as a release of his right to levy within that time. He may levy his execution, and the defendant is left to his action for a breach of the agreement.

Trespass for levy of *fi. fa.* on plaintiff's property, and justifica-- tion under the *fi. fa.* pleaded by defendant. Tried before Judge: FLOYD, in Pike Superior Court, August Term. 1847.

It appears that plaintiff, a number of years ago, purchased of defendant, as executor of P. Scott, deceased, a tract of land, and gave his note with security therefor. Afterwards, in March, 1843, defendant having sued the note to judgment, had the tract of land levied upon and sold at sheriff's sale, under the judgment, and be-- came the purchaser, and shortly thereafter had another levy made' by virtue of the *fi. fa.* the same being still unsatisfied. On the 3d day of June thereafter, in pursuance of an agreement, the plain-- tiff gave the defendant three new notes, with J. W. Coppedge, Madison R. Chambers, and Thomas Coppedge, as his securities, due in one, two, and three years, the last falling due on the 25th day of December, 1845, for exactly the balance due on said *fi. fa.* including the defendant's bid for the land. The plaintiff insisted that the notes were given in full satisfaction of said *fi. fa.* and bid, and for the purchase of said land, while the defendant con-- tended that said notes were given as collateral security to the *fi. fa.* and for indulgence thereon. The testimony offered on both sides to prove the agreement upon which the said notes were given, conflicted. It appeared that the plaintiff was to remain in pos- session of the land; that he paid the first note, and part of the second, and before the last note fell due, to-wit, on the 25th No- vember, 1845, the defendant caused said *fi. fa.* again to be levied, on the plaintiff's property, which was sold in January, 1846.

Under this testimony, the plaintiff upon the trial insisted,

1st. That the *fi. fa.* was paid off by the giving of the notes long before the levy, and that therefore the levy and sale was a trespass.

2d. That admitting that the notes were only given as collateral security to the *fi. fa.* the defendant was bound to suspend all ac- tion thereon until the 25th December, 1845, when the last note fell due and remained unpaid, and having proceeded to levy be-- fore that time, he was a trespasser.

The Court below charged the jury,

1st. That if, by the agreement between Chambers and Mc- Dowell, the notes were received by McDowell in extinguishment of the execution, then the levy, by his order, was a trespass.

2d. That if the execution was not agreed to be extinguished, and the agreement was, that prompt payment of each instalment

should be a condition of farther indulgence, and the payments had not been promptly made, then the levy was not a trespass.

3d. If McDowell did agree, in consequence of new securities being given, to indulge the defendant in execution, until the last note fell due, without regard to the punctual payment of each instalment as it was payable, then the levy being made before the maturity of the last note, was a trespass.

The charge of the Court on the 2d and 3d points, was excepted to.

ARNOLD, for the plaintiff in error.

GIBSON and ALLEN, for the defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

The record exhibits some conflict of evidence, as to what was the agreement between McDowell and the plaintiff in error, Chambers, touching the notes given by the latter to the former, some of the witnesses testifying that they were given in extinguishment of the execution, and others that they were given as collateral security, and were in no way to affect the judgment, but that the defendant was to have indulgence so long as the instalments were promptly met. The court, very properly, left the facts to the jury, and they rendered a verdict for the defendant.

The positions assumed by the Judge, in his instructions to the jury, are,

1. If by the agreement between Chambers and McDowell, the notes were received by McDowell in extinguishment of the execution, then the levy of the execution, by his order, was a trespass.

2. If the execution was not agreed to be extinguished, and the agreement was that prompt payment of each instalment should be a condition of farther indulgence, and the payments had not been promptly made, then the levy was not a trespass.

3. If McDowell did agree, in consideration of new securities being given, to indulge the defendant in execution until the last note fell due, without regard to the punctual payment of each instalment as it was payable, then the levy being made before the maturity of the last note, was a trespass.

The first proposition is not controverted by the plaintiff in error; it is incontrovertible. If the notes were taken in payment of the execution by agreement, it is as effectually extinguished at

if paid in gold or silver. The judgment is satisfied, and the execution, having discharged its office, is defunct. It is as impotent as a blank sheet of paper. If the plaintiff has, by agreement, got his satisfaction; all the right and power to enforce the defendant through the process of the court ceases; the judgment being released, the execution falls as a matter of legal necessity. If under such circumstances, the plaintiff, by virtue of the process of the court, seizes the goods of the defendant, he is as much a trespasser, as one who takes his neighbor's property, without color of law.

So in relation to a debt not in judgment. If the creditor accepts by agreement, other securities in substitution of his first securities, it is a release of the latter. It is the *novation* of the civil law, and may be plead in bar to an action to enforce the prior debt. 1 *Evans Pothier,* 385, 386. 19 *Johns. R.* 133, 134.

The second proposition is equally plain. If the defendant is indulged on the execution against him, upon condition that he promptly pays the debt by instalments, and fails to fulfil the condition, he can take nothing under the agreement, because he has not fulfilled his part of it. He shall not profit by his *laches.* The parties are remitted to the position they at first occupied. 1 *Mass.* 433. 7 *Mass.* 264. 13 *Mass.* 319.

The third proposition of Judge Floyd may be varied thus: "A plaintiff in execution, who has agreed with the defendant, upon consideration of new securities, to indulge him, by suspending the execution *for a limited time,* and who orders a levy before the expiration of the time upon the goods of the defendant, is guilty of a trespass."

As the case was first presented to us, exception to the charge of the court was taken with numerous specifications. The counsel for the plaintiff in error, however, finally reduced them to, one or two; that one upon which he mainly relied, and which seems to me to be alone in conflict with the opinion of the court, is expressed in the following words:

"If notes with good security are given for a judgment debt, whether absolutely or only as collateral security, the plaintiff cannot proceed with the execution until the notes are returned." We have already determined that if notes are agreed to be taken in extinguishment of a judgment, it is a payment, and the execution is extinct. We may, therefore, in the consideration of the ground

taken by the plaintiff in error, omit all reference to the word *absolutely*. We understand, then, his position to be, that if notes with security are taken as collateral security for a judgment, the judgment is released *ipso facto*; but it may be revived by a return of the notes. This must be the legal import of the terms in which the plaintiff in error has expressed himself. Now, how do the positions of the court and of the plaintiff in error, stand relatively to each other? The court rules, that if a creditor, upon sufficient consideration, indulges the defendant by agreement, for a limited time, and levies his execution before the expiration of that time, on the goods of the defendant, he is guilty of a trespass; that is to say, an agreement to indulge, for a limited time, is a release of the plaintiff's right to levy within that time. The plaintiff in error complains of other portions of the charge, as well as this, and claims higher ground, to-wit, that the fact of taking *collateral* security, with or without an agreement to indulge at all, is a release of the judgment. The complaint is not that the court is wrong in the extent to which it does go, but that it does not go far enough. First, then, I consider the doctrine as asserted by the plaintiff.

[1.] It is generally true that a security for a debt is extinguished by taking securities for the same debt, which, in legal contemplation, are of a higher nature, and which afford a remedy co-extensive with that given by the first security. Thus a simple contract debt is released or extinguished by a specialty security. 3 *B. and C.* 210, 211. 5 *D. and R.* 262, *S. C. Cro. Car.* 415. *Bac. Ab. Debt. G.* 1. 1 *Saund. R.* 295, *note a.* 3 *East*, 258, 9. 1 *M. and S.* 575. 3 *Moore*, 277. 2 *Bing. N. C.* 692. *Chitty on Contracts*, 782, 783.

As a general rule, the acceptance of other securities of the same or a lower grade, does not release the first security, and cannot be pleaded in bar. But if the creditor accepts, *in full satisfaction*, a security of the same grade, it may be plead in bar as an *accord and satisfaction*. 20 *John. R.* 76. 2 *Metcalf*, 233. 1 *Wend.* 172. 5 *T. R.* 515, 513. 3 *Wend.* 68, *Chitty on Cont.* 763, *note* 1.

It is also true, that if any security be taken as collateral to other securities held by the creditor, that security so taken, will not operate as a release of the prior securities. 1 *Serg. and Rawle*, 294. 5 *Mass.* 11. 3 *B. and C.* 210. 4 *C. and P.* 151. 1 *Mason*

R. 482.   2 Conn. R. 120.   1 Brock. C. C. R. 166.   Story on Cont. 417.   Chitty on Contracts, 763.

In Twopenny and Boys vs. Young, 3 B. and C. 208, Baily, J. says: "Where there is that in the instrument which shows that the parties intended the original security to remain in force, the new one has not the effect of extinguishing it." See also 2 B. and A. 38. In Emes and another vs. Widowson, 4 C. and P. 151, there was an assignment of property for the purpose of secur-ing debts due and to be due, with a power of sale upon giving six months' notice. Tindall, C. J. said : "I am of opinion that such an assignment can only be considered as collateral security, and that the personal remedy is not suspended, as there is not any clause to that effect in the deed; it is no answer to the action, and the plaintiff is entitled to a verdict." In Langdon and another, Administrators, vs. Potter and another, the attorney of the plain-tiff indorsed on the execution, that he had received the promisso-ry notes of a stranger for a greater amount than the debt, payable to the debtor, which the attorney was to collect, and in conside-ration of which, he agreed with the defendant that the execution should be returned unsatisfied. It was insisted by counsel for the defendant, that this arrangement was a satisfaction of the judg-ment. By the Court : "If the plaintiffs themselves had made this receipt upon the execution, instead of Mr. Taylor, (the attorney,) it would not have had the operation contended for on the part of the defendant. It does not purport to be received in satisfaction of the debt, but merely to be taken for collection. Another exe-cution might lawfully have been sued out immediately after this should have been returned." 13 Mass. 319. In Upham and another vs. Smith, one made a promissory note, payable on de-mand, and the promissee afterwards executed a letter of license, in which he covenanted to receive payment in five equal instal-ments, and if he sued the promissor contrary to the tenor and ef-fect of said license, he should be discharged of all demands. One of the instalments not being paid, suit was brought upon the note before the last instalment was due, and held to lie. 7 Mass. 264. Cases of like character might be multiplied to almost any extent. The authorities are conclusively against the position of the plaintiff. The cases referred to, in the main, apply to debts not in judgment. The principles upon which they are founded, apply with stronger force to this case. Here is a judgment. The evi-

dence of a debt of the highest dignity, ascertained by a court of competent jurisdiction, with a right of immediate enforcement by execution, which, it is claimed, is released by the naked fact of taking collateral security. It would be unreasonable to hold that a judgment creditor cannot accumulate his securities. The true doctrine is, that if the debt is unpaid, and the execution is a valid and subsisting process, and the plaintiff has not bound himself *never* to enforce it, he may levy it and be guiltless of a trespass, as we shall now endeavor to demonstrate.

[2.] It is due to Judge Floyd, to say, that in his certified opinion, he expresses doubts as to the correctness of the proposition, that *where a party agrees to indulge his debtor for a limited time, and levies before the expiration of the time, he is guilty of a trespass.* He doubted whether the defendant's remedy would not be alone upon the agreement, for damages. The latter we think the true doctrine. If the former could be maintained, it would be doubtless upon the principle, that an agreement to indulge, for a stipulated time, by a judgment creditor, operates as a release during that time, of his right to levy. If it did so operate, it still does not vacate the process of the court. It is still vital. And the plaintiff violates no law of the land in using it. He violates his contract, and for that he is amenable by action, to his debtor. But does it so operate? By the analogies of the law, upon principle, it does not. It is true that a perpetual covenant not to sue, that is, a covenant by a creditor with his debtor, that he will never sue, is a release of the debt, and may be plead in bar; and if such a covenant is a release of a right of action, a like covenant, that is a covenant or agreement never to enforce a judgment, will be a release of a right to levy. I can see no difference. The reason of this rule is this. The damages which in such a case the defendant would be entitled to recover, is precisely the amount of the debt which the creditor sues for; and to prevent circuity of actions, the covenant is construed a release, and may be pleaded in bar.

But such is not the rule, in case of a covenant not to sue, for a time which is limited; because the reason does not apply. A creditor thus covenanting, who violates his contract, is liable in damages, to the amount of the injury which the debtor sustains. That is not necessarily the amount of the debt; it is uncertain and dependant upon circumstances. Circuity of action would not be

prevented, by permitting in this case, the covenant to be plead, and it is no release for that reason. The parties are left to their respective actions; the creditor may sue, notwithstanding his agreement to forbear; his right of action is not released. His debtor is left to his action, and his remuneration in damages. So here the right to levy is not released; the plaintiff may, notwithstanding his agreement, proceed to levy; he violates no law in so doing; he is not a trespasser. But for his bad faith, for his violation of his agreement, he is liable to the defendant. It is not necessary for us to say how far, and under what circumstances, a Court of Equity would extend to the defendant relief, by injunction. There might be cases, doubtless, where Chancery would interpose. Both of the rules now recognised, are stated by *Lord Bacon* in the following words : " A covenant perpetual, as that the covenantor will not sue, without any limitation of time, is a defeasance, or absolute release, and this construction has been made to avoid circuity of action. For if, in such case, the party should, contrary to his covenant, sue, the other party would recover precisely the same damages which he sustained by the other's suing. But if the covenant be that he will not sue *until such a time*, this does not amount to a release, nor is it pleadable in bar as such, but the party hath remedy only on his covenant." And they are recognised very generally in the American courts. We think them conclusive as to the question now under review. Whilst we think the opinion in this regard, of the circuit court erroneous, the case need not go back, inasmuch as the verdict was for the defendant. *Bac. Ab. Release, A. Roll's Ab.* 939. 2 *Beuls.* 95, 290. 3 *Lev.* 41. 2 *Salk.* 573. 2 *Ld. Ray.* 786. *Carth.* 210. *Cro. Eliz.* 352. *Carth.* 63. 1 *T. R.* 446. 8 *T. R.* 486. 2 *Saund. R. note*, 48. 12 *Mod.* 551, *S. C.* 8 *John. R.* 58. 19 *John. R.* 134.